Estate of Morris Braverman, Sol Eigen, Executor v. Commissioner.
Estate of Braverman v. Commissioner
Docket No. 88458.
United States Tax Court
T.C. Memo 1962-21; 1962 Tax Ct. Memo LEXIS 286; 21 T.C.M. (CCH) 98; T.C.M. (RIA) 62021; February 1, 1962
*286 Held, that the valuations of the shares of common stock which decedent owned in two closely held corporations at the time of his death were the valuations as determined by the Commissioner in the deficiency notice. They were not the valuations used in the estate tax return which was filed by petitioner and they were not the valuations asked for by respondent in his amended answer filed at the time of the hearing. Howard A. Rumpf, Esq., 11 W. 42nd St., New York, N. Y., for the petitioner. Gerald N. Daffner, Esq., for the respondent. BLACK *287 Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in the estate tax of Morris Braverman, deceased, in the amount of $46,845.30. The adjustments which resulted in the deficiency are stated in the deficiency notice as follows: ADJUSTMENTS TO TAXABLE ESTATE
Taxable estate as disclosed by return
[54,344.01)
Additions to value of Taxable estate and decreases in deductions: (a) Stocks and bonds
$ 27,000.00
(b) Debts of decedent
231,995.00
258,995.00
Total
$204,650.99
Reductions in value of Taxable estate and increases in deductions: (c) Funeral and administration expenses
17,500.00
Taxable estate as adjusted
$187,150.99
Explanation of Adjustments
(a) Schedule B - Stock and bonds
Item
Number
Return
Corrected
17 30 shares no par value common stock of Paterson Strange Mill
Properties, Inc.
$ 61,747.60
$ 81,747.60
18 25 shares of no par value common stock of Dunlop Mill
#1 Properties, Inc.
19,670.06
26,670.06
Net increase
27,000.00
$108,417.66
$108,417.66
Items 17 and 18 are adjusted to fair market value as of date of death.
(b) Schedule K - Debts of decedent
Item
Number
6 Claim of Gloria Maria Boaery
$260,000.00
$ 28,005.00
Decrease in deduction
231,995.00
$260,000.00
$260,000.00
Item 6 is adjusted to allow deduction for amount actually paid in satisfaction of decedent's*3*obligation.
(c) Schedule J - Funeral and Administration Expense
Item
Number
2 Attorneys' fees
0
$17,500.00
Increase in deduction
$17,500.00
$17,500.00
$17,500.00
Item 2 is adjusted to allow deduction for attorneys' fees.
Computation of Estate Tax
1. Gross estate tax
0
$46,845.30
2. Credit for State death taxes
0
0
3. Net estate tax payable
0
$46,845.30
4. Estate tax previously assessed
0
5. Deficiency
$46,845.30
*288 It is determined that no credit is allowable under Section 2011 of the Internal Revenue Code of 1954 on account of any State estate, inheritance, legacy or succession taxes. If any such taxes are, or have been, actually paid to any State, the allowable credit therefor, subject to the limitations provided in section 2011 of the Internal Revenue Code of 1954, must be established by submission of the evidence required under section 20.2011-1(c)(2) of the Estate Tax Regulations. Errors are assigned in the petition as follows: (1) The Commissioner erred in increasing the taxable net estate in the amount of $27,000.00 in connection with the fair market value of certain stocks (Paterson Strange Mill Properties, Inc. and Dunlop Mill #1 Properties, Inc.) as shown in Schedule B of Form 706. 2. The Commissioner erred in determining that no credit was allowable under Section 2011 of the Internal Revenue Code of 1954 on account of any State estate or inheritance tax. Respondent filed at the hearing a motion for an increase in the deficiency by the amount of $12,099.70. The ground for the increase in the deficiency *289 was as follows: That the fair market value as of the date of death of the 30 shares of common stock of Paterson Strange Mill Properties, Inc. is $120,000 and the fair market value of the 25 shares of common stock of Dunlop Mill #1 Properties, Inc. is $28,750. Findings of Fact A stipulation of facts, together with exhibits attached thereto, was filed at the hearing and is incorporated herein by this reference. Petitioner Sol Eigen is the duly appointed executor of the estate of Morris Braverman who died testate on August 13, 1956. The estate tax return was filed by petitioner with the district director of internal revenue, Newark, New Jersey. Petitioner valued the gross estate of decedent as of the date of death as provided for by section 2031(a) of the 1954 Code. On August 13, 1956, decedent owned 30 shares of no par value common stock of Paterson Strange Mill Properties, Inc., hereinafter referred to as Paterson, and 25 shares of no par value common stock of Dunlop Mill #1 Properties, Inc., hereinafter referred to as Dunlop, both closely held real estate corporations. Paterson is a New Jersey corporation, incorporated on October 1, 1943. Since the date of incorporation decedent *290 has served as president, Joseph Braverman as secretary-treasurer, and Beatrice Garber as vice president of the corporation. Dunlop is a New Jersey corporation incorporated in April 1944. Since that date decedent has served as president, Sam Sherman as secretary-treasurer, and Joseph Braverman as vice president of the corporation. The shareholders of Paterson as of the date of death, the number of shares owned, and the total number of issued and outstanding shares are as follows: Morris Braverman
30 shares
Joseph Braverman
43 shares
Joseph Braverman and Beatrice Garber, Trustees
for grandchildren of Morris Braverman
27 shares
100 shares issued
and outstanding Joseph Braverman and Beatrice Garber are the children of Morris Braverman, deceased. The shareholders of Dunlop as of the date of death, the number of shares owned, and the total number of issued and outstanding shares are as follows: Morris Braverman
25 shares
Beatrice Garber and Joseph Braverman for 4
grandchildren
25 shares
Estelle Bernstein
25 shares
Sam Sherman
25 shares
100 shares issued
and outstanding Estelle Bernstein and Sam Sherman are not related to the deceased *291 or his surviving children. The property known as Paterson covers an entire square block bounded by Madison, Morton, Beech, and Essex Streets in the City of Paterson, New Jersey. It is surrounded by paved streets and has a total land area of 80,000 square feet. The property has two interior paved yards and is improved with six mill-type buildings and one store-type building located in one of the yard areas. There is a total area of 186,300 square feet in the mill-type buildings and 900 square feet in the store-type building. The property known as Dunlop is located at the corner of Straight. Morton, and Madison Streets in Paterson, New Jersey, and covers 25,000 square feet of land. The property is improved with a building 3-stories high with a building area of 51,630 square feet. On December 31, 1956, Paterson and Dunlop conveyed the land and buildings to Donal, Inc., a New Jersey corporation, hereinafter referred to as Donal. Paterson conveyed to Donal the real estate, together with the buildings and other machinery used in connection with the mill buildings, for the sum of $400,000. The terms of sale were $25,000 cash, $75,000 due within 18 months, secured by promissory notes, *292 and a purchase money mortgage in the amount of $300,000. The mortgage provided for monthly payments of principal and interest in the amount of $1,500, with interest payable at the rate of 5 percent per annum. The unpaid balance of principal due was payable on January 1, 1967. Dunlop conveyed to Donal the real estate, together with the building and other machinery used in connection with the mill building, for the sum of $115,000. The terms of sale were $33,000 cash and a purchase money mortgage in the amount of $82,000. The mortgage provided for monthly payments of principal and interest in the amount of $500, interest payable at the rate of 5 percent per annum, with the unpaid balance due on January 1, 1967. As of the date of death, Paterson and Dunlop were fully occupied and the properties conveyed to Donal were not subject to any outstanding liens. The fair market value of the 30 shares no par value common stock which decedent owned at the time of his death in Paterson was $81,747.60 as determined by the Commissioner in his deficiency notice. The fair market value of the 25 shares of no par value common stock of Dunlop at the time of decedent's death was $26,670.06 as determined *293 by the Commissioner in his deficiency notice. Opinion BLACK, Judge: The adjustment which the Commissioner made to the estate tax return which the petitioner filed after decedent's death and which is the cause of the principal amount of the deficiency is not contested by petitioner. That adjustment was the claim on the return of an indebtedness by Morris Braverman at the time of his death to Gloria Maria Boaery of $260,000 which was reduced by respondent in his deficiency notice to $28,005. The latter figure was the amount actually paid by decedent's estate to Gloria Maria Boaery in full settlement of decedent's obligation to her at the time of his death. The other adjustment which the Commissioner made to the estate tax return filed by petitioner was (1) to raise the valuation placed on the 30 shares of stock which decedent owned in Paterson at the time of his death from a valuation of $61,747.60 as stated in the return to a valuation of $81,747.60 determined in the deficiency notice (an increase in valuation of $20,000); and (2) to raise the valuation of the 25 shares of stock which decedent owned in Dunlop from $19,670.06 as reported in the estate tax return to a valuation *294 of $26,670.06 determined in the deficiency notice (an increase in valuation of $7,000). Therefore, it can be seen that the increase which respondent determined in his deficiency notice of the above stocks which decedent owned at the time of his death was a total of $27,000. The parties are in agreement that inasmuch as the stocks were in two corporations which were closely held and were not listed on any stock exchange, an acceptable method of determining their fair market value at the time of decedent's death is to determine the value of the properties owned by each corporation at the time of the death of decedent. Petitioner contends that the value of the stocks was as fixed in the estate tax return filed by petitioner. Respondent contends that the value was as contended by him in his amended answer and that there should be an increased deficiency of $12,099.70 resulting therefrom. It goes without saying that the valuations fixed by the Commissioner in his deficiency notice are presumed to be correct. It is not presumed that the valuations as claimed in his amended answer as a basis for an increased deficiency are correct; in other words, there is no presumption of correctness *295 of an increased deficiency. The burden of proof is therefore on petitioner to show that the valuations determined by the Commissioner in his deficiency notice are incorrect. On the other hand, the burden of proof is on respondent to show that the valuations contended for by him in his amended answer are correct. Each of the parties has introduced expert testimony as to the valuations of the stocks in question. We have carefully studied and considered this expert testimony and also the other evidence in the record and we are convinced that the evidence fully supports the valuations determined by the Commissioner in his deficiency notice and we have made findings that these valuations are the values of the stocks at the time of the death of decedent. We are not convinced that the evidence supports the valuations claimed by respondent in his amended answer asking for an increased deficiency. We do not think there would be any advantage in entering into a lengthy discussion of the reasons in support of our conclusions. Suffice it to say that we have reached these conclusions from the evidence in the record and have embodied the valuations reached in our Findings of Fact. Neither *296 party makes any mention on brief concerning Issue Two raised by the petitioner in the petition. No evidence with reference to it was received at the hearing and, therefore, we have not discussed it in our opinion. Respondent, in his brief, says "The amount of attorney's fees and administrative expenses allowable will be agreed upon by the parties. A Rule 50 Computation will therefore be necessary." Decision will be entered under Rule 50.